# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| THOMPSON TRUCK & TRAILER, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | No. 16-CV-192-LRR <br><br> **ORDER** |

## *TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *1*

*III. BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.   Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.   Tax Scheme* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.  LEGAL STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.   ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

## *I.  INTRODUCTION*

The matter before the court is Defendant United States of America's ("the government") Motion to Dismiss ("Motion") (docket no. 10).

## *II.  RELEVANT PROCEDURAL HISTORY*

On November 8, 2016, Plaintiff Thompson Truck & Trailer, Inc. ("Thompson") filed a Complaint (docket no. 2) alleging that the government erroneously denied Thompson's tax refund claims during tax periods ending in June of 2011 and September of 2011. On February 24, 2017, the government filed the Motion. On March 17, 2017, Thompson filed a Resistance (docket no. 16). On March 24, 2017, the government filed

a Reply (docket no. 18). The matter is fully submitted and ready for decision.

### III. BACKGROUND

#### A. *Factual Background*

Accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Thompson, the facts are as follows.

Thompson is a heavy truck dealer. Complaint ¶ 5. In 2011, Thompson purchased and resold a number of trucks equipped with diesel particulate filters ("DPFs"). *Id.* ¶ 6. DPFs are ceramic devices that, when installed, collect "particulate matter" from truck exhaust and "oxidize and break down" the particles in a manner that reduces harm to the environment. *Id.* ¶¶ 7-8. This is the only function of DPFs. *Id.* ¶ 9. Thompson installed DPFs onto the trucks at issue solely to meet emissions standards required by Environmental Protection Agency ("EPA") regulations. *Id.* ¶ 6.

The DPFs installed onto the trucks sold by Thompson added a value of approximately $8,000 per truck. *Id.* ¶¶ 13, 21. Upon selling the trucks, Thompson paid a twelve percent excise tax on the full sale price of each truck, pursuant to Internal Revenue Code ("IRC") § 4051(a)(1). *Id.* ¶¶ 14-15, 22-23. Acting under the belief that IRC § 4051(a)(1) does not require payment of an excise tax for the value of the DPFs, Thompson compiled supporting documentation and submitted a refund claim to the Internal Revenue Service ("IRS") seeking recovery of its perceived overpayments. *See id.* ¶¶ 17, 24; *see also* Ex. 1 to Complaint (docket no. 2-1) (refund claim); Ex. 2 to Complaint (docket no. 2-2) (documenting the extent of Thompson's perceived overpayment); Ex. 3 to Complaint (docket no. 2-3) (consent from truck purchasers regarding Thompson's entitlement to any refund issued by the IRS). The IRS denied Thompson's refund claim. Complaint ¶¶ 19, 27; *see also* Ex. 4 to Complaint (docket no. 2-4) (IRS letter denying Thompson's refund claim).

## B. Tax Scheme Background

IRC § 4051 imposes a twelve percent tax on "the first retail sale" of "[t]ruck trailer and semitrailer chassis," "[t]ruck trailer and semitrailer bodies" and "parts or accessories sold on or in connection therewith or with the sale thereof." 26 U.S.C. § 4051(a)(1)(C)-(D). Enacted by Congress in 1983, IRC § 4051 is the latest in a series of excise tax provisions aimed at various types of automobiles, as well as "parts or accessories" of such automobiles, dating back to 1917. *See* War Revenue Act of 1917, ch. 65-50, § 600(a), 40 Stat. 300, 316 (imposing tax on sale of "all automobiles, automobile trucks, automobile wagons, and motorcycles"); Revenue Act of 1919, Pub. L. No. 65-254, § 900(1)-(3), 40 Stat. 1057, 1122 (imposing tax on sale of automobiles, motorcycles and "[t]ires, inner tubes, parts, or accessories" for any taxable automobiles or motorcycles); Revenue Act of 1932, Pub. L. No. 72-154, § 606(a)-(c), 47 Stat. 169, 261-62 (imposing tax on sale of automobile "chassis and bodies," as well as "[p]arts or accessories (other than tires and inner tubes)" for any automobile chassis and bodies); Internal Revenue Code of 1939, 26 U.S.C. § 3403 (1939) (imposing tax under substantially similar terms as the Revenue Act of 1932); Internal Revenue Code of 1954, 26 U.S.C. §§ 4061-4063 (1954) (imposing tax under substantially similar terms as the Revenue Act of 1932); Revenue Act of 1971, Pub. L. No. 92-178, § 401(a), 85 Stat. 497, 530 (imposing tax on sale of "chassis and bodies" of large trucks, buses, and truck and bus trailers and semitrailers, as well as "parts or accessories therefor sold on or in connection therewith or with the sale thereof," but exempting from tax any "vehicle having a gross vehicle weight of 10,000 pounds or less").

The terms "parts or accessories" are not expressly defined in IRC § 4051, and they were not defined in the numerous prior iterations of the law. However, in certain iterations of the law, Congress included examples of the types of items that it considered to be parts or accessories, which included "spark plugs, storage batteries, leaf springs, coils, timers, and tire chains, which are suitable for use on or in connection with, or as

3

component parts of any covered automobile." *E.g.*, Revenue Act of 1932, § 606(c), 47 Stat. 169, 262; Internal Revenue Code of 1939, 26 U.S.C. § 3403(c) (1939); Internal Revenue Code of 1954, 26 U.S.C. § 4062(a) (1954). Furthermore, the United States Department of Treasury ("Treasury") has put forth regulations providing guidance as to the meaning of "parts or accessories" subject to the tax. *See, e.g.*, Ex. 1 to the Motion (docket no. 10-2) at 15-17 (1920 regulation defining the terms as to the Revenue Act of 1918); Ex. 2 to the Motion (docket no. 10-3) at 21-22 (1932 regulation defining the terms as to the Revenue Act of 1932); 5 Fed. Reg. 142, 152-53 (Jan. 11, 1940) (defining the terms as to the Internal Revenue Code of 1939); 24 Fed. Reg. 5901, 5903 (Jul. 23, 1959) (defining the terms as to the Internal Revenue Code of 1954). At present, Treasury regulations define "parts or accessories" as follows:

> The term "parts or accessories" includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. . . . An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the articles is in effect the load being transported and the primary function of the article is to serve a purpose unrelated to the vehicle as such.

26 C.F.R. § 48.4061(b)-2(a). Additionally, Treasury regulations incorporate a separate regulation to aid in the ultimate determination of whether an item is taxable under IRC § 4051. *See* 26 C.F.R. § 145.4052-1(f)(2) (incorporating "Paragraphs (a)(2) and (3) of § 48.4061(a)-1). Specifically, the incorporated regulation provides that "equipment or machinery installed on a taxable chassis or body" is only taxable if it "contributes toward the highway transportation function of the chassis or body." 26 C.F.R. § 48.4061(a)-

4

1(a)(3).

## IV. LEGAL STANDARD

The government seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion at 1.

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

## V. ANALYSIS

In the Motion, the government seeks dismissal of Thompson's claims because, according to the government, Thompson was not entitled to the tax refund that it claims it was erroneously denied. *See* Brief in Support of Motion (docket no. 10-1) at 9-10. Specifically, the government argues that the DPFs were subject to taxation because: (1) IRC § 4051's imposition of a tax on "parts or accessories" unambiguously encompasses the DPFs at issue, *id.* at 10-17; and (2) even if the meaning of "parts or accessories" is

ambiguous in IRC § 4051, the DPFs are nevertheless taxable under the Treasury regulations defining those terms, *id.* at 17-18.

The government first argues that, "[e]xamining [IRC § 4051] on its face, the ordinary meanings of 'parts' and 'accessories' encompass the filters at issue." Brief in Support of Motion at 10. Thompson argues that the absence of any definition of "parts or accessories" within the text of IRC § 4051, combined with the long history of Treasury regulations and IRS guidance defining the terms, establish that the terms are ambiguous. Brief in Support of Resistance (docket no. 16-1) at 5-8.

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *LaCurtis v. Express Med. Transporters, Inc.*, 856 F.3d 571, 578 (8th Cir. 2017) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson*, 519 U.S. at 341). "A 'statutory provision is ambiguous' if 'it is susceptible to more than one reasonable interpretation.'" *Id.* (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011)). If a statute is unambiguous, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *accord Stanley v. Cottrell*, 784 F.3d 454, 465-66 (8th Cir. 2015) ("If the words are unambiguous, our inquiry is complete.").

As an initial matter, the court declines to lend credence to Thompson's theory that the mere existence of Treasury regulations and IRS guidance regarding "parts or accessories" renders the statutory text ambiguous. *See* Brief in Support of Resistance at 5-6. A statute's ambiguity is not determined by the response it evokes among government agencies, but rather from the statute's text, interpreted from its language and its context

within a broader statutory scheme. *See LaCurtis*, 856 F.3d at 578; *see also Supervalu, Inc.*, 651 F.3d at 863 (stating that courts "may resort to legislative history and any other authorities that might facilitate . . . efforts to discern Congress's intent" only after determining that "the statute's language is not plain but instead ambiguous"); *United States v. Mendoza-Gonzalez*, 520 F.3d 912, 914 (8th Cir. 2008) ("Only if the language is ambiguous may we look beyond the text."), *vacated on other grounds* 556 U.S. 1232 (2009). Even within the context of *Chevron* deference, Thompson's argument seeks to put the cart before the horse by looking to an agency's interpretation as *evidence* of ambiguity. *See, e.g.*, *Andrade-Zamora v. Lynch*, 814 F.3d 945, 951 (8th Cir. 2016) (describing the "familiar two-step framework" of *Chevron* deference, wherein resort to agency interpretation occurs only after a determination of statutory ambiguity). Indeed, the foundation of *Chevron* deference is the presumption that when "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843-44. Under Thompson's proposed theory, an agency could unilaterally determine a statute's ambiguity simply by taking action to define or interpret the statute. Such a system would distort the bedrock principle that agencies receive power only "by virtue of congressional delegation." *Bowsher v. Synar*, 478 U.S. 714, 752 (1986) (Stevens, J., concurring) (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 985 (1983) (White, J., dissenting)). Therefore, the court does not consider the existence of regulations and guidance defining "parts or accessories" to be probative of the ambiguity of such terms within the statute.

The court turns now, as it must, to the language of the statute. As noted above, the terms "parts or accessories" are not defined within the statutory text. Thompson argues that the absence of a statutory definition alone renders the terms ambiguous. Brief in Support of Resistance at 6 ("Congress's silence left a space for the agency to make a regulation."). However, that is not the case. "When a word is not defined by statute,

7

[courts] normally construe it in accord with its ordinary or natural meaning." *United States v. Jungers*, 702 F.3d 1066, 1071 (8th Cir. 2013) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). "If the words [of a statute] convey a definite meaning, which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted." *United States v. I.L.*, 614 F.3d 817, 821 (8th Cir. 2010) (quoting *Lake Cty. v. Rollins*, 130 U.S. 662, 670 (1889)). "Ordinarily, a word's usage accords with its dictionary definition." *Yates v. United States*, __ U.S. __, __, 135 S. Ct. 1074, 1082 (2015).

Generally, a "part" is something "relating to a portion or division of a whole." Part, n.I, *Oxford English Dictionary Online*, http://www.oed.com/view/Entry/138188?result=1&rskey=mY2H5h& (last visited Aug. 4, 2017). In the specific context at issue, a "part" refers to "[a]ny of the manufactured objects that go to make up a machine or instrument" or, in other words, "a component." Part, n.I.8, *Oxford English Dictionary Online*, http://www.oed.com/view/Entry/138188?result=1&rskey=mY2H5h& (last visited Aug. 4, 2017). Thompson argues that this definition of "part" remains ambiguous with respect to this case. Brief in Support of Resistance at 7. Specifically, Thompson emphasizes the definition's reference to the relationship between a part and a machine. *Id.* According to a definition identified by Thompson, a machine is defined by its ability to perform a task. *Id.* Thompson argues that a truck's task, as relevant to this case, is the ability to "propel[] itself (and its cargo and occupants) down the highway" and Thompson claims that DPFs do not contribute to that task. *Id.* The court declines to adopt the excessive formality exhibited by Thompson's nesting of one definition within another. The definition and ordinary understanding of the word "part" imposes no essentiality on the thing it describes. Therefore, even accepting Thompson's logic that the sole task of a truck is the basic act of locomotion, the fact that a DPF's utility is merely collateral to that task is of no significance to its status as a truck "part."

8

In its typical non-legal context, an "accessory" is "[a] subordinate or auxiliary thing; an adjunct; an accompaniment; . . . a minor fitting or attachment." Accessory, n.2.a, *Oxford English Dictionary Online*, http://www.oed.com/view/Entry/1046?redirectedFrom=accessory#eid (last visited Aug. 4, 2017). According to Thompson, this definition is also ambiguous with respect to this case because it describes something that is "subordinate" or non-essential. Brief in Support of Resistance at 7-8. Thompson points to the government's argument that DPFs are required for trucks to meet EPA requirements as indicating that the DPFs are essential to the truck's operation and, therefore, not accessories. *Id.*; *see also* Brief in Support of Motion at 16-17. The court finds this construction to be overly simplistic. EPA compliance may, in fact, be essential to a truck's operation insofar as it is required by law. However, so too is basic locomotion essential to a truck's operation. A DPF may be essential in one area (EPA compliance) and, simultaneously, "subordinate" or non-essential in another (basic locomotion). The court finds that the definition of "accessory" is not rendered ambiguous simply because there is more than one essential component to a truck's operation. In sum, after consulting the dictionary definitions of "part" and "accessory," and considering Thompson's arguments regarding such definitions, the court finds that the ordinary meaning of the terms comports with their dictionary definitions.

Furthermore, interpreting "parts or accessories" in a manner consistent with their ordinary meaning creates no "absurdity, nor any contradiction" within the context of IRC § 4051. *I.L.*, 614 F.3d at 821 (quoting *Lake Cty.*, 130 U.S. at 670). First, the statute broadly imposes a tax on automobile trucks and trailers exceeding a defined weight threshold, and it extends the tax to "parts or accessories sold on or in connection therewith or with the sale thereof." 26 U.S.C. § 4051(a)(1). While the statute creates exceptions for parts or accessories sold as replacements or that fail to meet a certain dollar-value threshold, *see* 26 U.S.C. § 4051(b)(2), it creates no exception based on the type or

9

function of the parts or accessories subject to the tax. The absence of any fine grain exception resembling the one urged by Thompson reveals Congress's intent for the tax to apply broadly to all parts or accessories sold on or in connection with a truck. *See United States v. Smith*, 499 U.S. 160, 167 (1991) ("Where Congress explicitly enumerates certain exceptions to a general [premise], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980))). Second, the statute lacks an explicit provision allowing certain truck attachments to be excluded from tax. This further reveals Congress's intent that the tax apply broadly to all types of components—i.e. parts or accessories—attached to a truck at the time of its sale, without inviting exceptions based on the function of a particular component. In short, IRC § 4051 speaks broadly regarding the imposition of tax on the first retail sale of trucks and their associated parts or accessories, rendering the broad ordinary meanings of "parts or accessories" appropriate in context.

Appearing in a broadly structured statute like IRC § 4051, the broad meaning of "parts" and "accessories" does not signal ambiguity. Rather, it plainly signals Congress's intent for the taxation of such items to apply broadly. Thompson has furnished no other reasonable interpretation for "parts or accessories" in light of this context, and the court finds that IRC § 4051 is not susceptible to any other reasonable interpretation. *See LaCurtis*, 856 F.3d at 578. Because the DPFs in this case were component items "equipped" to the trucks sold by Thompson and functioned in relation to the trucks' exhaust systems, *see* Complaint ¶¶ 6-8, they are "parts or accessories" of the trucks within the ordinary meaning of those terms. Therefore, they were subject to tax under IRC § 4051. Accordingly, the court shall grant the Motion and shall dismiss Thompson's

claims.[1]

## VI. CONCLUSION

In light of the foregoing, the Motion (docket no. 10) is **GRANTED**. The Complaint (docket no. 2) is **DISMISSED**. The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 7th day of August, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[1] Because the court finds that IRC § 4051 is not ambiguous with respect to the issue presented in this case, the court declines to address the government's alternative argument that Treasury regulations independently require dismissal of Thompson's claims. *See Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 940-41 (8th Cir. 2014) ("Only if we conclude that 'the statute is silent or ambiguous with respect to the specific issue' presented will we then proceed to the second step of the *Chevron* framework, which requires us to consider whether 'the agency's reading [of an ambiguous statute] fills a gap or defines a term in a reasonable way in light of the Legislature's design.'" (quoting *North Dakota v. E.P.A.*, 730 F.3d 750, 763 (8th Cir. 2013))).